Good morning. Case number 10-1788, in the interest of Montyce H. With the lawyers who are going to argue that case, please approach the bench and introduce yourself, please. Good morning, Your Honors. Assistant Appellate Defender Thomas Gonzales on behalf of the appellant. Good morning, Your Honors. My name is Jessica Barge and I'm Assistant State's Attorney representing the people of the state of Illinois. Okay, both of you guys have argued before us before? Yes. Have you? Not this panel. Okay. Okay, so the appellant understands you have to reserve some time for rebuttal. Correct. Okay, let's proceed. Good morning, Your Honors. Again, may it please the Court. I am going to focus my argument this morning on Issue 1 because the second issue cannot be reached unless this Court finds that the aggravated EUW statute is unconstitutional in its face. The Illinois application... Haven't the courts already decided that issue? Pardon me? I said, haven't the courts already decided that issue? What, the aggravated EUW statute, the constitutionality of it? Yes. Well, this Court has addressed it on a variety of recent occasions, but our position is that those courts are wrongly decided for several reasons, one of which is that the facially unconstitutional statute is, it unconditionally prohibits a civilian's right, core right, to keep and bear arms for self-defense outside the home. You're asking us to change existing law. That's what you're doing. Well, no. I mean, the controlling law right now is Heller-McDonald, which basically, you know, cited to some of the historical aspects of the Second Amendment, the text of it, of course, and talked quite at length about what that core right of that Second Amendment was designed to protect. Young man, if I could, I just want to interrupt you. Does Heller or McDonald either of them say that there's a core right to self-defense outside the home? Not explicitly, but at the very least, implicitly. And here's why. Because again, they spent some considerable time discussing not only the text, but the amendment was ratified. And what they talked about specifically, you know, a couple of things. One is they, of course, cited approvingly to none, a couple of state court cases, one of which was none, one of which was Andrews, and those cases basically were struck, they struck down state statutes that had done exactly what this aggravated EUW statute does. It had prescribed and was a plaintiff prohibition on possession of guns outside the home for self-defense. And what Heller did say was that none captured, it captured what the scope of the Second Amendment was all about. And while those particular... They're talking about the historical setting, but what did they hold? Well, they held, number one, is that the right to self-defense is a core component of the Second Amendment right to keep and bear arms. In the home. No, they did not limit it to the home. You don't think they limited it. I do not. I do not. And we maintain that it did not. And again, it did not for a couple of reasons beyond which, you know, the approving citation to none and Andrews, they also talked about and they recognized that that core right is most acute or most notable in the home. Now that language wouldn't make sense if that meant, well, it only exists inside the home. It talked about historically accepted exceptions like keeping or prohibiting guns in places like churches and schools and whatnot. But again, that suggests and certainly implies that, well, it's the right that exists outside the home beyond those sensitive places. They also discussed people like people who were mentally ill or people who were convicted felons. They didn't mention youth, but how old is the defendant in this case? He was 15 years old. And you don't think that the state could prescribe a law that applied to a minor? They might be able to, but what they didn't, again, and this I guess relates to the second issue, this unlawful possession of a firearm statute. And that suffers from the same infirmities as the aggravated EEW statute. And again, the problem there is that it's a flat-out prohibition. There's no tailoring whatsoever. It proscribes the right, the core right to keep and bear arms for self-defense in all situations. There's no exceptions whatsoever. And that's the problem with it. Is there any evidence that this 15-year-old had this gun for self-defense? Well, that's not the part. I guess that's not really relevant. What's relevant is what the law prescribes. If that's not relevant, then every 15-year-old should have a gun. Is that what you think? Well, what's protected is the right to keep and bear arms. And again, Heller spoke at length about that. For self-defense. For self-defense. But what these statutes do is they criminalize. They criminalize the mere possession. They criminalize the mere carrying without regard to intent. Without regard to anything. I mean, there's no evidence in this case at all that this 15-year-old had this gun for self-defense. So if you want to use that argument, it has to be based on evidence. The law always is based on evidence. Where is there evidence here? Well, we submit that it doesn't have to be. It doesn't have to be so then we should allow every 15-year-old to walk around with a gun. Well, the Constitution, again. Or how about the 12-year-olds and the 11-year-olds? I mean, where does it stop? I can't speak to the 11 or 12-year-old, but I would certainly say the 15-year-old. And again, looking at the historical aspects of the Second Amendment, and I discussed some of it, you know, of course, in the brief itself, but it talks about the right of men and women, boys and girls, young and old. And, you know, there's reference there in that decision to, you know, letters, you know, the Jeffersonian Encyclopedia to his 15-year-old nephew. And it's been historically recognized that the right to self-defense and certainly constitutional rights,  there's no magic arbitrary number that legislatures. Do they apply to felons? Well, again, Heller recognized that a legislature might have some, certainly has a legitimate purpose in keeping them out of the hands of felons, the mentally ill and things like that. But again, I guess related to your question as far as juveniles. Again, the problem here is that it prescribes the possession for all people under 18 years old. I guess it would be a different matter if there was some semblance of tailoring, if there was some, you know, for example, maybe some requirements for licensing and things of that nature. But again, the problem with even the statute that's directed to juveniles or those under 18, it's the same problem that exists with the Aggie EW statute. It's a flat-out prohibition based on an arbitrary age of majority and there's no other exceptions. And what's even worse with the unlawful possession of a firearm statute is it doesn't even allow for possession in the home. It doesn't even allow, it has no circumstances under which a minor can possess. And again, that's without respect to intent. Okay, so it doesn't really matter whether or not he was carrying it for some purpose. What the law prescribes is possession. It's a crime of possession and it criminalizes that mere possession. And what Heller does speak to is the fact that the possession itself, the carrying, is a constitutionally protected right. It's the core component, which is the right to self-defense with the use of an operable handgun. If you keep using the word self-defense when there's no evidence here that this young boy had this gun for self-defense. I guess that's a cancer. Maybe you picked the wrong case to do this with. I don't believe so, Your Honors, because again, we're attacking the faciability of this statute. It applies to everybody. It's a blanket prohibition. And because it involves a fundamental core right, it doesn't matter whether or not there's some other legitimate interest or I should say other legitimate application, the bottom line here is that it's a flat-out prohibition. There's zero tailoring. Well, you said there's no tailoring, but it doesn't speak to the right of the person to have the weapon within their home, the place of abode, the fixed place of business or on an invitee's land. It doesn't allow them to come there with the weapon. But our position is that also that core right extends outside of the home. And Heller doesn't restrict, the Heller holding isn't restricted to that. And I think that's where some of these earlier decisions went. Is there a case that says that there's a right to have the gun outside of the home? Well, I suppose there isn't, but if you think about the fact that Illinois stands alone in this type of blanket prohibition, that's not too surprising. I mean, all the other states correctly recognize that core right by devising some form of carry and possession in public. And this state could equally do that as well. Maybe they don't have as many dead people on the street as we do. Pardon me? You said maybe they don't have as many dead people on the street shot every day as we do. Well, there's ways to deal with that. Not having a minor having an easily accessible handgun loaded on the street at 9 something at night. But then regulations can be devised to address things like that. Kind of what they should be doing and what the other states do in the adult context. Again, registration, keeping them out of the hands of certain felons and the mentally ill and whatnot. And as far as the concerns over, well, what if, you know, some misuse or nefarious purposes or things are done with a gun, that's what the other statutes are. There's other statutes on the books. You may want to reserve some of your time for rebuttal. Yes, I would like to. Okay. Can I just get out a couple more times? We've read your briefs, so you don't have to repeat anything. We're quite aware of this issue. We've decided this. I've written many, many decisions on the same issue before. Okay. But I guess just in the interest of time, what I really want to hammer home again is the fact that this Heller decision is not limited to inside the home, just the fact that there's a lot of reasoning behind that decision. And I think where a lot of the courts went wrong is just kind of throwing that aside and outright ignoring it without looking at the whole discussion and the reasoning and the rationale for how they got to that result. And this is, again, only in Illinois do they flatly prohibit a civilian's right to carry and possess guns for self-defense. And nowhere in the text or in the history of the amendment does it limit that particular right to government agency. We understand your argument, but you're running out of time. Thank you, Your Honor. Thank you. May it please the Court. Counsel. I am Assistant State's Attorney Jessica Vargin, and I represent the people of the state of Illinois. Your Honor's 15-year-old minor respondent was found at 945 on the streets of Chicago on a school night after a curfew in possession of a loaded handgun and marijuana. He was found delinquent of aggravated unlawful use of a weapon and unlawful possession of a firearm. Today he is now challenging the constitutionality of those statutes under the Second Amendment. However, there is no Illinois authority that supports his contentions. In fact, every single Illinois court case that has reviewed the aggravated unlawful use of a weapon statute has found, and based on Heller-McDonald, has found that it is constitutional. And unlike the laws that were challenged in Heller-McDonald, Illinois's aggravated unlawful use of a weapon statute does not outright ban handgun possession or ban operable firearms in the home. It only limits the carrying of loaded firearms outside of one's home, land, place of business, or if those firearms are uncased and immediately accessible. And that statute survives constitutional challenges under any level of scrutiny. Shortly after Heller, this Court applied rational basis tests to the aggravated unlawful use of a weapon statute in both Dawson and Williams, and it found that there was a rational basis for the statute's ban on carrying and possessing a loaded firearm outside of the home. And that's the protection of police officers and the general public from gun violence in our community. Now more recently, intermediate scrutiny has been applied to analyze the statute in Aguilar and Mimes. However, they still found that prohibiting loaded firearms and accessible firearms in public places passes that scrutiny because the law is substantially related to the important governmental interest of protecting the police and the general public from the inherent dangers of gun violence. Now the counsel said that the statute is not substantially related. However, it does contain several exemptions so individuals can carry or transport firearms as long as they're in a broken down or non-functioning state, if they're not immediately accessible, if they're unloaded, or if they're encased. Now there has been no case or any authority that says that these statutes must be reviewed under strict scrutiny. However, even if strict scrutiny were used, the statutes would still pass constitutional muster because there's a compelling governmental interest in making the community safer. Now carrying a loaded, uncased, immediately accessible firearm in public, even for self-defense purposes, poses severe dangers to the public. There's a danger of someone thinking they have a need for self-defense that's mistaken and has lethal consequences. There can be someone who intends to shoot someone, has a poor shot, and hits an innocent bystander. There can be accidental shootings, malfunctioning of the weapon. Not to mention the danger that is posed to police officers when they stop a vehicle or a person on the street and they have a loaded handgun either on the person or in their vehicle. It's a very real danger and a compelling governmental interest. And this statute has been narrowly tailored to achieve that compelling interest. As I said, this exempts firearms that are possessed in one's home, business, land, or on another person's home, business, or land place of business when they're invited, not property. It exempts a firearm that's been broken down, non-functioning, not accessible, unloaded, encased. And not only that, but the possession of the firearm must be in public. Of all the subsections in that statute, they focus on those areas of the highest level of danger to those people around them. Situations we talked about, felons, juveniles who have been adjudicated delinquent. Someone has a recent order of protection that would also apply to minors. For the aggravated unlawful use of a weapon statute, it's been challenged four times in Illinois. And in all of those cases, the statute is found constitutional. There's nothing new here today, and there's certainly no evidence of self-defense in the record. And in this specific case, we have a minor who is carrying a loaded and concealed weapon in the streets of Chicago. Now, in the brief, the minor's respondent says he has just as strong interest in self-defense as an adult would. However, the argument was rejected in United States v. Rene E. The First Circuit found there's a long-standing tradition of prohibiting juveniles from receiving and possessing handguns. Not to mention, there are compelling reasons why juveniles should not be afforded the same constitutional rights as adults. They're not mature enough, they lack judgment, they lack impulse control, and they still need their parents and adults to help them to make informed decisions. Second Amendment is not the only constitutional right where juveniles do not afford the same constitutional rights as adults. They have limited Fourth Amendment and First Amendment rights in schools. They are not allowed to vote until they're 18. They cannot join the military without parental consent, and they must be adjudicated in adult court. And that is because juveniles and adults are different. Juveniles are not mature enough to make informed decisions and to have a deadly weapon on them. It's not unconstitutional to regulate kids having guns, and Illinois' unlawful possession of a firearms statute does not violate the Second Amendment. Moreover, there are actually exceptions with the statute. Juveniles can possess rifles and shotguns or larger firearms. They can use a handgun for hunting, fishing, or target practice. So this isn't an all-out ban, as my respondent has said. Your Honors, for these reasons, and the reasons stated in our brief, the people respectfully ask this Court to affirm the Juvenile Court's adjudication of delinquency for aggravated unlawful use of a weapon and unlawful possession of a firearm. Thank you. Thank you. Any time for your rebuttal. Thank you, Your Honors. Again, first addressing the point about, again, the lack of authority. And we again point out that, well, that's not surprising, because Illinois stands alone. Illinois stands alone in this blanket prohibition. And in reference to Justice Lamkin's earlier question about any other authority recognizing the right to possess guns outside of the home, well, this Court recently in Mimes took a step in that right direction by at least recognizing that, logically speaking, it has to exist outside the home. I mean, that whole language that they speak about. When you say that Illinois stands alone, you mean all of the other states allow 15-year-olds to walk around with guns? They allow some form of public carry and public possession. He said of minors. Okay, well, let's say addressing the minors again and addressing counsel's concern about, you know, their lack of maturity and whatnot. Well, my response is twofold. First, of course, the constitutional rights do still apply to them. They have to write, for example, I just said is there a case outside of Illinois that says a minor has the right to possess a handgun outside? Again, not explicitly, but again, this is a prohibitory statute as opposed to a regulatory one. I hear what you're saying. Because I haven't found any, and so I was wondering if you found some. Again, not explicitly. But again, the problem with the statute, and again, we're making a facial attack, is it's, again, strictly prohibitory. There's nothing regulatory about it. You know, in terms of the concerns about, you know, are minors able to function like adults and make decisions and whatnot? Well, again, tailor it in some fashion. There's absolutely no tailoring whatsoever. I can't imagine a 15-year-old with a higher IQ than one with a lower IQ could have a weapon or one who had been emancipated. But this statute doesn't even afford him that poor right to defend himself inside of his own home. And it's not like youths don't have some interest or some occasion to have to defend themselves. You know, particularly ones in crime-ridden neighborhoods. I mean, why wouldn't the statute at least provide for that? The problem with the statute is it provides no exceptions. It's a flat-out prohibition, end of story, no way to get around it. And that's the problem with it. There's no tailoring at all. So whether it's strict scrutiny, whether it's intermediate scrutiny, it doesn't matter. There's no tailoring. That's the problem with it. And as far as the other... Oh, is this in violation of the Illinois Constitution? Well, certainly the Illinois Constitution can't provide less protection. So it's, you know, of course we maintain that it's in violation of both. You didn't argue that in your briefs, did you? You only talked about the federal constitution. I thought I cited two. I honestly don't remember off the top of my head. I do. Okay, well, our position, of course, is that it violates both. Because certainly the Illinois Constitution can't provide less. In fact, the Illinois Constitution is more problematic to the extent that it says, you know, with the exception of the state police power. Well, I mean, you know... Do you think the framers of the federal constitution envisioned 15-year-olds, you know, smoking marijuana and carrying guns? Going back to the Wild West, is that what we're talking about? Well, I don't know about that, but they certainly envisioned them carrying arms. And to the extent, again, Heller cites... You're trying to tell me that this is okay. This is the way the world should go. Well, I'm saying that this is the way it was envisioned and accepted at the time the Second Amendment was drafted, which Heller says that's what we need to look to. And it cited, you know, approvingly, the historical aspects of it and the acceptance of it. And not only acceptance, but the mandate of requiring kids as young as 15 years old to carry guns. So, again, because this is flatly prohibitory, that's the problem with it. And the earlier cases that talk about things like, you know, keeping them out of the hands of someone who was subject to a restraining order. Intermediate scrutiny. Yeah, those are different. That's some semblance of tailoring. The statute is addressing specific problematic situations. Okay? Where here, there's none of that. It says you can't possess a gun. And to make matters worse, counsel talks about, well, you know, it's okay if it's case and it's unloaded. Well, the Aggie EW statute says as long as the ammunition, even if it's unloaded, as long as the ammunition is nearby, well, you committed a crime. So, I mean, that's the problem with it. You'll have to sum up because you're way past your time. All right. Well, I'll just sum up by reiterating that. This is a core blanket, or it's a blanket prohibition of a core constitutional right under no level of heightened scrutiny. It's certainly not rational basis. Under any heightened level of scrutiny, it doesn't pass constitutional muster. It's categorically and facially unconstitutional at the very least. It's certainly not tailored to meet any compelling state interest to meet constitutional muster. So we ask that Montez's adjudication be reversed. Okay. Thank you very much. Of course, it's a very interesting case. And Judge Cahill, who is on this panel, could not be here today, but he will be listening and may be listening right now to the arguments. And we'll take this case under advisement.